IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| G & G Closed Circuit Events, LLC. | : | |
| | : | Case No. 1:24-cv-131 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Motion for Default |
| Ricardo Grant, *et al.*, | : | Judgment |
| | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiff's Motion for Default Judgment under Rule 55 of the Federal Rules of Civil Procedure.  (Doc. 14.)  Plaintiff G & G Closed Circuit Events, LLC asserts that Defendants Ricardo Grant and Cinema OTR LLC unlawfully intercepted and broadcast a pay-per-view fight without purchasing the required sublicense from Plaintiff.  The Clerk of Court filed an Entry of Default against Defendants after they failed to plead or defend in this action.  (Doc. 12.)  Plaintiff now moves the Court to enter a default judgment against Defendants in the amount of $28,752.  For the reasons below, the Court will **GRANT** default judgment in the amount of $12,470.75.

I.      **PROCEDURAL HISTORY**

Plaintiff initiated this action by filing a Complaint against Grant and Cinema OTR on March 14, 2024.  (Doc. 1.)  It asserted claims for the unauthorized interception of satellite communications in violation of 47 U.S.C. § 605 and the unauthorized interception of cable communications in violation of 47 U.S.C. § 553.  (*Id.* at PageID 4–7.)  Grant executed Waivers of Service of Summons on behalf of himself and Cinema OTR.  (Docs. 9, 10.)  However, Defendants never filed Answers or otherwise responded to the Complaint.  Accordingly, the Clerk of Court filed an Entry of Default against Defendants on September 9, 2024.  (Doc. 12.)

1

Plaintiff now moves for default judgment against Grant and Cinema OTR pursuant to

Federal Rule of Civil Procedure 55(b).  Plaintiff seeks $28,752 in damages under 47 U.S.C.

§ 605 as follows:

- $5,400 in statutory damages,

- $21,600 in enhanced statutory damages,

- $1,350 in attorney fees, and

- $402 in costs.

(Doc. 14 at PageID 34.)[1]

## II.    STANDARD OF LAW FOR GRANTING DEFAULT JUDGMENT

Rule 55 provides:

(b) Entering a Default Judgment.

(1) By the Clerk.  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals— preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

---

[1]  A plaintiff cannot recover damages under both § 553 and § 605 under facts like these.  *See*, *e.g.*, *Joe Hand Promotions, Inc. v. Fazio*, No. 5:11 CV 1955, 2012 WL 1036134, at *3 (N.D. Ohio Mar. Jan. 31, 2012, *report and recommendation adopted*, 2012 WL 1035886 (N.D. Ohio Mar. 27, 2012); *J & J Sports Prods., In. v. Fisher*, No. 1:12-cv-790, 2013 WL 4482405, at *4 (S.D. Ohio Aug. 20, 2013).

(D) investigate any other matter.

Fed. R. Civ. P. 55(b).

"[A]fter entry of default, the decision to grant a default judgment is within the Court's

discretion." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013).  An

entry of default "conclusively establishes every factual predicate of a claim for relief." *Thomas*

*v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007).  That is, the well-pleaded allegations of fact

establishing liability are taken as true following an entry of default.  *See Hawkins v. Franklin*

*Cnty. Sheriff's Off.*, No. 2:13-CV-186, 2015 WL 1647033, at *2 (S.D. Ohio Apr. 14, 2015);

*Williams v. Rudin*, No. 1:11-CV-01103, 2012 WL 3562134, at *1 (W.D. Tenn. July 31, 2012),

*report and recommendation adopted*, 2012 WL 3562106 (W.D. Tenn. Aug. 16, 2012).

However, allegations about the amount of damages must be proven with evidence through

detailed affidavits, documentary evidence, or at an evidentiary hearing.  *See Proampac Holdings,*

*Inc. v. First Source, LLC*, No. 1:20-cv-417, 2021 WL 2334288, at *1 (S.D. Ohio June 8, 2021);

*see also Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (stating that an evidentiary

hearing is allowed, but not required, by Rule 55(b)(2)).  "An evidentiary hearing is not required

if the Court can determine the amount of damages by computation from the record before it."

*Truex v. Drivers Direct, LLC*, No. 1:21-CV-01343, 583 F. Supp. 3d. 1033, 1035 (N.D. Ohio

2022).

III.    **FACTS AND ANALYSIS**

A.      **Liability**

Plaintiff seeks default judgment against Grant and OTR Cinema for the unauthorized

interception of a satellite communication in violation of 47 U.S.C. § 605.[2]  Grant is listed as the

---

[2] The statute prohibits the following acts:

managing member of Cinema OTR, operating at 1517 Vine Street in Cincinnati, Ohio, for

purposes of its Ohio Liquor Control license.  (Doc. 14-5 at PageID 61.)  Grant is the principal

owner and operator of Cinema OTR as well.  (Doc. 1 at PageID 3.)

Persons aggrieved by violations of § 605(a) have a private right of action.  47 U.S.C.

§ 605(e)(3)(A).  "In order for Plaintiff to establish a violation of § 605(a), it must show that

(1) Defendants intercepted the transmission of the Program; (2) Defendants did not pay for the

right to receive the transmission; and (3) Defendants displayed the Program to the patrons of its

commercial establishment."  *Joe Hand Promotions, Inc. v. Truong*, No. 3:19-CV-00701, 2020

WL 7014303, at *3 (M.D. Tenn. May 20, 2020) (cleaned up).  For individual liability to attach,

the plaintiff must establish that the individual had the right and ability to direct the misconduct,

as well as a direct financial interest in the misconduct.  *Joe Hand Promotions, Inc. v. Pat's Snack*

*Bar, LLC*, No. 6:19-CV-67, 2020 WL 1923178, *3 (E.D. Ky. Apr. 21, 2020); *J & J Sports*

*Prods., Inc. v. The Green Plantain, Ltd.*, No. 1:12-cv-337, 2013 WL 3322061, at *4 (S.D. Ohio

---

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a).

July 1, 2013).  A "general statement of ownership" is not enough to establish individual liability. *J & J Sports Prods., Inc. v. Fisher*, No. 1:12-cv-790, 2013 WL 4482405, at *3 (S.D. Ohio Aug. 20, 2013).  For example, a plaintiff could allege and prove that the owner was present on the night of the misconduct or that the owner supervised or authorized the misconduct.  *Id.*

In this case, Plaintiff has established liability by the facts accepted as true from the Complaint and the additional evidence filed in support of the Motion for Default Judgment. Plaintiff had the exclusive nationwide commercial distribution (closed-circuit) rights to the Errol Spence Jr. v. Terence Crawford championship fight program ("the Fight Program"), including the undercard bouts and commentary, held on Saturday, July 29, 2023.  (Doc. 1 at PageID 4; Doc. 14-2 at PageID 52.)  Plaintiff sold sublicense rights to broadcast the Fight Program to commercial establishments such as casinos, bars, restaurants, and nightclubs.  (Doc. 1 at PageID 4; Doc. 14-2 at PageID 52.)  The sublicense fee was based on the fire code occupancy of the establishment and varied by each event.  (Doc. 14-2 at PageID 54.)  The commercial license fee of the Fight Program for an establishment with a maximum capacity of sixty was $1,800.  (*Id.*) Grant and Cinema OTR did not lawfully buy a sublicense from Plaintiff to broadcast the Fight Program.  (Doc. 1 at PageID 5; Doc. 14-2 at PageID 53.)

Plaintiff also had anti-piracy enforcement rights with respect to the Fight Program.  (Doc. 14-2 at PageID 52.)  Nicolas Gagliardi, the President of G & G Closed Circuit Events, explained that the company had experienced "serious erosion in the sales of our proprietary programming," and had determined that "the cause of the erosion of our customer base was the rampant piracy of our broadcasts by unauthorized and unlicensed commercial establishments (signal pirates)." (*Id.* at PageID 53.)  In response, Plaintiff retained licensed private investigation agencies to detect and identify commercial signal pirates.  (*Id.*)  Gagliardi explained how signal piracy harms

the company and the greater community:

> [T]he unchecked activity of signal piracy not only has resulted in our company's
> loss of several millions of dollars of revenue, but also has a detrimental effect
> upon lawful residential and commercial customers of the cable, satellite and
> streaming platforms, whose costs of service are increased significantly by these
> illegal activities, including the depravation of tax revenue to the communities
> where our potential customers reside, and the denial of benefits such tax revenue
> would provide the residents of such communities.

(*Id.* at PageID 55.)

Gagliardi explained his understanding that closed-circuit programing cannot be mistakenly or innocently intercepted.  (*Id.* at PageID 54.)  Satellites transmit programs from satellites to cable, satellite, and streaming systems in an electronically coded or scrambled format.  (*Id.* at PageID 55.)  For commercial establishments authorized to view the Fight Program, Plaintiff provided the commercial establishments, or their programming providers, with electronic decoding equipment and satellite coordinates necessary to unscramble the satellite signal.  (*Id.*)  Establishments intercept and broadcast programming by: (1) fraudulently buying a residential license for a commercial establishment at the lower licensing rate; (2) accessing the broadcast via a website or internet service unauthorized to broadcast or distribute the programming; (3) accessing foreign satellite broadcast signals; (4) using a cable drop or splice from a neighboring property; or (5) using illegal unencryption devices or authorization codes.  (*Id.* at PageID 54.)

Plaintiff paid Diversion Investigations $687.50 to detect, identify, and document the unlawful exhibition of the Fight Program.  (*Id.* at PageID 53.)  Pierce Bryant of Diversion Investigations saw the Fight Program being broadcast on two 70-inch televisions at Cinema OTR around 9:45 p.m. on July 29, 2023.  (Doc. 14-4 at PageID 59.)  One television was behind the bar and the other was in the rear of the establishment.  (*Id.*)  Bryant watched two commentators discussing the fight and boxer Jermell Charlo.  (*Id.*)  He estimated the capacity of Cinema OTR

6

to be 60 patrons, but there were only 14 patrons present.  (*Id.*)  The Affidavits of Gagliardi and

Bryant establish that Grant and Cinema OTR did not have a sublicense to broadcast the Fight

Program, that they pirated the signal for the Fight Program, and that they broadcast the signal to

patrons at Cinema OTR unlawfully.  *See Truong*, 2020 WL 7014303, at *3 (listing three

elements of the claim).

    As to Grant's individual liability, Plaintiff has not alleged or established that Grant was at

Cinema OTR on the night of the Fight Program.  However, it has alleged more than simply that

he was an owner and operator of Cinema OTR.  It alleged that upon information and belief that

Grant "had the right and ability to supervise the activities of those employees of Cinema" and

that he "specifically directed the employees of Cinema to unlawfully intercept and broadcast" the

Fight Program at Cinema OTR.  (Doc. 1 at PageID 3.)  Plaintiff also alleged that Grant had "an

obvious and direct financial interest in the activities of Cinema's operations, which included the

unlawful interception" of the Fight Program.  (*Id.* at PageID 4.)  These allegations are taken as

true after the Entry of Default was filed.  *See Hawkins*, 2015 WL 1647033, at *2.  If Defendants

had defended this lawsuit, then the Court might have required Plaintiff to support these broad

allegations with more specific facts.  But Defendants defaulted, and Plaintiff could not secure

discovery from them.  The Court finds that Plaintiff has established personal liability against

Grant in the context of this case.

**B.    Damages**

    The issue, therefore, becomes the proper amount of damages to award Plaintiff.  An

aggrieved plaintiff may elect to recover either actual damages or statutory damages "in a sum of

not less than $1,000 or more than $10,000."  47 U.S.C. § 605(e)(3)(C)(i).  In addition, if the

defendant acted "willfully and for purposes of direct or indirect commercial advantage or private

7

financial gain," a district court also can award enhanced damages in an amount not to exceed

$100,000.  47 U.S.C. § 605(e)(3)(C)(ii).  Finally, a prevailing plaintiff can recover attorney fees

and costs too.  47 U.S.C. § 605(e)(3)(B)(iii).  Here, Plaintiff seeks $5,400 in statutory damages,

$21,600 in enhanced damages for a willful violation, and $1,752 in attorney fees and costs.

(Doc. 14 at PageID 34.)

       **1.**       **Statutory Damages**

The Court begins with the appropriate statutory damages award.  District courts have

discretion to determine a "just" award within the statutory guidelines.  *Nat'l Satellite Sports, Inc.

v. Eliadis, Inc.*, 253 F.3d 900, 918 (6th Cir. 2001) (citing § 605(e)(3)(C)(i)(II)).  Courts in Sixth

Circuit often use the economic loss suffered by the plaintiff as the baseline for the statutory

damages award.  In *Eliadis*, the Sixth Circuit upheld as "not clearly erroneous" a statutory

damages award of $4,500 that was based on the almost $1,000 sublicensing fee for broadcast

rights plus investigative and administrative costs of approximately $3,500 incurred to determine

the source of the § 605(a) violation.  *Id.*  The Sixth Circuit did not hold that the appropriate

statutory award had to be limited to the plaintiff's economic loss.  Nonetheless, some decisions

in this Circuit limit statutory damages in this way.  *See*, *e.g.*, *Joe Hand Promotions, Inc. v.

Turner*, No. 3:19-CV-012, 2021 WL 1383267, at *5 (S.D. Ohio Apr. 13, 2021) (awarding the

$8,200 licensing fee as the statutory damages); *Joe Hand Promotions, Inc. v. Willis*, No. 5:08 CV

2786, 2009 WL 369511, *2 (N.D. Ohio Feb. 11, 2009) (awarding the minimum statutory

damages allowed of $1,000 after determining that the defendant's fee to broadcast the fight

would have been $875).

Other courts have calculated the statutory damages award more broadly.  Courts examine

"other facts to determine the appropriate damages award, including the number of patrons at the

time of the violation, the seating capacity of the establishment, the rate charged by the plaintiff

for the broadcast, whether the defendant charged a cover to patrons or was likely to have

obtained significant profits in another manner." *Truong*, 2020 WL 7014303, at *4 (internal

quotation and citation omitted).  Courts also look to remedy other losses suffered by the plaintiff

in addition to the cost of the sublicense fee.  For example, one Kentucky district court calculated

the appropriate statutory award by tripling the amount of the licensing fee.  *Pat's Snack Bar*,

2020 WL 1923178, at *5.  The court sought to compensate the plaintiff for the goodwill it lost

from establishments that paid the licensing fee but had to compete against signal-pirating

establishments.  *Id.*; *see also Joe Hand Promotions, Inc. v. Krazy Chicken Int'l LLC*, No. 3:22-

CV-59, 2022 WL 3022539, at *3 (E.D. Tenn. July 29, 2022) (adding $550 to statutory damages

to remedy the harm to plaintiff's reputation and goodwill).  A different Kentucky district court

tacked on $1,000 to the base calculation to account for profits the defendants made from the

cover charge and the sale of food and drinks.  *Joe Hand Promotions, Inc. v. Young*, No. 5:09-

CV-157, 2010 WL 3341449, at *3 (W.D. Ky. Aug. 24, 2010).  A district court in Michigan

started with the lost licensing fee and then tacked on an award of $50 times the estimated number

of patrons in the establishment ($50 x 63 patrons) to calculate the statutory damages.  *J & J*

*Sports Prods., Inc. v. Club Le'Elegant Corp.*, No. 14-12233, 2015 WL 13050011, at *2 (E.D.

Mich. Mar. 31, 2015).  Finally, Judge Sandra Beckwith in this District Court awarded the

maximum $10,000 in statutory damages to deter "conduct that is apparently quite common yet

quite difficult for Plaintiff to detect and document."  *Joe Hand Promotions, Inc. v. Jon Musser*,

No. 1:15-cv-272, Doc. 11 at PageID 66–67 (S.D. Ohio Sept. 15, 2015).

      In this case, Plaintiff's economic losses start with the $1,800 sublicense fee for the Fight

Program that it would have charged to Cinema OTR, an establishment with an occupancy limit

of around 60 patrons.  It also includes the $687.50 that Plaintiff paid to Diversion Investigations

to investigate piracy of the Fight Program.  The Court agrees with the district courts above that

these sums alone are insufficient to remedy the harm to Plaintiff's reputation and goodwill.

Moreover, a statutory damages award limited to the amount of the sublicensing fee has no

deterrent effect because there is no penalty for getting caught other than paying the fee that

already was owed.  For these reasons, the Court will double the sublicense fee and add on the

investigation cost, which amounts to an award of $4,287.50 in statutory damages for Plaintiff.

### 2. Enhanced Damages

Next, the Court addresses Plaintiff's request for enhanced damages of $21,600.

Enhanced damages are awarded when the violation of § 605(a) is "willful[] and for purposes of

direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).

For the reasons below, the Court agrees that enhanced damages are appropriate but finds that an

award of $21,600 is excessive.

Several district courts within the Sixth Circuit have doubled or tripled the statutory

damages award to calculate an appropriate enhanced damages award for willful violations.  *See*,

*e.g.*, *Joe Hand Promotions, Inc. v. Damene*, No. 3:23-CV-52, 2024 WL 181855, at *5 (S.D. Ohio

Jan. 17, 2024) (awarding enhanced damages double the statutory damages); *Joe Hand

Promotions, Inc. v. Young*, No. 1:22-CV-362, 2023 WL 5982824, at *3 (S.D. Ohio Sept. 14,

2023) (same); *Krazy Chicken, Int'l*, 2022 WL 3022539, *5 (awarding enhanced damages two-

and-one-half times the statutory damages); *Club Le'Elegant Corp.*, 2015 WL 13050011, at *2

(awarding enhanced damages triple the statutory damages); *Joe Hand Promotions, Inc. v. Fazio*,

No. 5:11 CV 1955, 2012 WL 1036134, at *4 (N.D. Ohio Mar. Jan. 31, 2012 (awarding enhanced

damages double the statutory damages), *report and recommendation adopted*, 2012 WL

1035886, at *1 (N.D. Ohio Mar. 27, 2012).  Conversely, at least two district courts in the Sixth

Circuit recently declined to award enhanced damages after finding that they were unnecessary

under the facts of the case.  *See G&G Closed-Cir. Events, LLC v. Bros. Bar & Grill*, LLC, No.

23-12999, 2024 WL 4457840, at *5 (E.D. Mich. Oct. 10, 2024) (finding that statutory damages

were sufficient); *Joe Hand Promotions, Inc. v. Mathews*, No. 2:22-CV-2593, 2023 WL 2727251,

at *4 (S.D. Ohio Mar. 31, 2023) (finding that the pirating establishment did not gain a

competitive advantage).

In this case, the Court has no difficulty concluding the violation was willful and for the

purpose of obtaining a commercial advantage or financial gain.  As the President of G & G

Closed Circuit Events explained, an establishment could not intercept and broadcast the Fight

Program inadvertently.  (Doc. 14-2 at PageID 54–55.)  Other courts have so found.  "Because

intercepting and unscrambling a television signal requires an overt act, 'it is inconceivable that

[Defendants] could have inadvertently decoded the scrambled signal or accidentally altered cable

services to result in the unauthorized broadcast."  *Truong*, 2020 WL 7014303, at *6 (quoting

*Pat's Snack Bar*, 2020 WL 1923178, at 5).  Other evidence of willfulness includes that

Defendants displayed the Fight Program on two televisions.  (Doc. 14-4 at PageID 59.)

On the other hand, there is no evidence that Defendants violated § 605(a) in the past or

that they advertised the broadcast of this Fight Program.  They did not impose a cover charge.

Finally, only fourteen patrons were in the establishment, less than one-fourth of its capacity.  The

presence or absence of these profit-related factors can be relevant to the amount of enhanced

damages to be awarded.  *See Mathews*, 2023 WL 2727251, at *4 (declining to award enhanced

damages because of the absence of profit-related factors); *Fazio*, 2012 WL 1036134, at *4 (N.D.

Ohio Mar. Jan. 31, 2012) (awarding lower amount of enhanced damages than sought by the

plaintiff because the defendant had not charged a cover, increased its prices, or advertised the fight).

The Court will award enhanced damages of $6,431.25, which is one and one-half times the statutory damages.  This amount is appropriate where the violation was willful, but not egregious.  Defendants will have to pay $10,718.75 in damages under § 605(e)(3)(C)(i) & (ii), an amount reasonably calculated to compensate Plaintiff for its losses, punish Grant and Cinema OTR for unlawful conduct, and deter future signal pirating.

### 3.    Attorney Fees and Costs

Finally, Plaintiff seeks $1,752 in attorney fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).  Plaintiff's counsel asserted that he spent 4.5 hours of time at a rate of $300 per hour for a total of $1,350 in attorney fees. (Doc. 14-3 at PageID 58.)  He also asserted that court costs amount to $402.  The Court will award $1,752 in attorney fees and costs.

## IV.    CONCLUSION

For these reasons, the Court **GRANTS** the Motion for Default Judgment (Doc. 9). Default judgment is awarded in favor of Plaintiff G & G Closed Circuit Events, LLC and against Defendants Ricardo Grant and Cinema OTR LLC in the amount of $12,470.75 as follows: $4,287.50 in statutory damages, $6,431.25 in enhanced damages, and $1,752 in attorney fees and costs.

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge

12